**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Angela Dudley,** | ) | **CASE NO. 1:06 CV 1638** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Ohio Department of Public Safety, et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

**Introduction**

This matter is before the Court upon defendants' Motion for Summary Judgment (Doc. 25). This case alleges retaliatory employment actions. For the following reasons, the motion is GRANTED.

**Facts**

Plaintiff, Angela Dudley, filed this Complaint against defendants, Ohio Department of Public Safety and John Campbell. Plaintiff, an African American female, has been employed by the Ohio Department of Public Safety (hereafter, the Department), Ohio Investigative Unit, since 1997.

Plaintiff began her service with the Department as an Enforcement Agent. As an

1

Enforcement Agent, she was charged with the responsibility of enforcing the liquor laws of the state of Ohio.  In March 2001, plaintiff was promoted to her current position of Assistant Agent in Charge (AAIC), assigned to work in the Cincinnati district.  Pursuant to Department policy, plaintiff was required to serve a one year probationary period as the AAIC.  Plaintiff served as the AAIC in Cincinnati until August 2001, when she took a voluntary disability leave due to stress.  She returned to her position as AAIC in June 2002 and was assigned to the Toledo district to complete her probation period.  After about three months in Toledo, plaintiff requested a lateral transfer to the Columbus district. She was told that in order to get the transfer her probation would need to be extended three months or until March 2003.  Plaintiff grieved this requirement and, as a result, she did not have to complete the extended probation.  She was able to complete the original probationary period in Columbus.  Plaintiff worked in the Columbus district until early 2003. SuAnn Cook was her supervisor.  (pltf. depo.)

Between August 2001 and August 2002, plaintiff filed four charges of discrimination with the Ohio Civil Rights Commission (OCRC)/EEOC alleging discrimination based upon her race, gender and disability, and retaliation for prior protected activities.  (Doc. 31 Exs. C,D, E and G).

In January 2003, plaintiff was transferred to the Cleveland district office. She has remained the AAIC of the Cleveland district since that time. In February 2003, defendant John Campbell was assigned as Agent in Charge (AIC) of the Cleveland district.  As AIC, Cambpell is plaintiff's direct supervisor.  (pltf. depo.)

Between April 2005 and October 2006, plaintiff filed 11 charges of discrimination

with the OCRC/EEOC.  (Caryl Ray-Whitaker aff.)

Although plaintiff's Complaint alleges discrimination and retaliation, plaintiff is not pursuing claims of the former but only contends that defendants retaliated against her. Plaintiff asserts that this lawsuit addresses three instances of retaliation which occurred on or after March 2005.  Thus, the following facts are confined to those incidents.

### (1) The three day fine

In the fall of 2004, John Campbell received an anonymous letter concerning Terrance Taylor, a food stamp agent in the Cleveland district. The letter alleged that Taylor was using his state vehicle for personal use and was not working during the times that he reported to be working.  According to Campbell, plaintiff was Taylor's direct supervisor. Plaintiff denies that she was Taylor's direct supervisor, but admits that she signed his daily reports. After receiving the anonymous letter, Campbell shared the letter with his director supervisor, Scott Pohlman, who authorized Campbell to look into the report. Campbell determined that the most efficient way in which to learn Taylor's whereabouts was to place a global positioning system unit ("GPS") on Taylor's vehicle. Throughout the fall of 2004 and early 2005, Campbell made several attempts to obtain a GPS unit from the Department as well as the Organized Crime section of the Attorney General's Office. Campbell was told by Pohlman several times that there were no GPS units available for use. Campbell finally requested permission from Pohlman to purchase a GPS unit. Pohlman gave Campbell permission, and Campbell purchased the GPS with his own funds without seeking reimbursement from the Department.  (Campbell aff.; Campbell depo.; pltf. depo.)

Campbell enlisted the assistance of Enforcement Agent Shawn Tatter, who had

3

experience in the matter, to place the GPS unit on Taylor's vehicle. The GPS was on Taylor's vehicle for about 10 working days.  When the GPS was removed by Tatter, the information on the unit was uploaded to Tatter's laptop and the data was then printed on a printer in the Cleveland district office.  Campbell compared the GPS information with the daily reports that Taylor submitted to his supervisors and discovered multiple discrepancies between the daily reports submitted by Taylor and the GPS unit information.  Taylor was ultimately charged criminally and discharged from his employment.  (Campbell aff.; Campbell depo.)

Campbell also found discrepancies between Dudley's and Taylor's daily reports on days that they were supposed to be working together. Campbell decided to have Tatter place a GPS on plaintiff's vehicle, but he did not receive permission from Pohlman to do so. Campbell later advised Pohlman that he was extending his preliminary work into the Taylor theft of time issue and had placed the GPS on plaintiff's vehicle. Pohlman instructed Campbell to remove the GPS and Campbell did.  The GPS unit was on plaintiff's vehicle for about six days.  Campbell's review of the GPS tracking system results on plaintiff's vehicle revealed discrepancies.  In particular, the results showed that plaintiff was falsifying her daily reports and approving Taylor's activity reports while knowing they were false.  (*Id.*)

Campbell turned over the results of the investigation to his supervisors and the Ohio State Highway Patrol.  He had no further involvement.  Campbell had no part in deciding whether plaintiff should have been disciplined for failing to supervise Taylor.  (Campbell aff.) Plaintiff was later issued a three-day fine for her failure to properly supervise Taylor.

(Campbell depo.; pltf. depo.) [1]

**(2) The five day fine**

According to Rita Raimer, she was asked to temporarily transfer to the Cleveland district in May 2005 in order to allow plaintiff and Campbell a "cooling off period." Raimer served as the AIC for the Cleveland district between Memorial Day until Labor Day 2005. Prior to this assignment, Raimer had not served as a permanent supervisor to plaintiff, but she was aware of plaintiff's prior EEOC/OCRC activity. When Raimer arrived in the district, she and plaintiff had a meeting to discuss Raimer's expectations of plaintiff. Raimer avers that one of the primary duties of the AAIC is to be the direct supervisor of the enforcement agents. In order to appropriately supervise the agents, the AAIC needs to work the same (or very similar) hours as the agents. Raimer noticed in the first week of her arrival in Cleveland that plaintiff's schedule did not mirror the schedules of her agents. The enforcement agents usually work later schedules toward the end of the week due to the liquor industry's peak hours on the weekend. Raimer advised plaintiff several times about this issue and instructed her to mirror the hours of the agents she was supervising. Plaintiff, however, continued to work different hours than her agents. The relationship between Raimer and plaintiff deteriorated, and plaintiff would not communicate with Raimer except through e-mail. Attached to Raimer's affidavit is a July 1, 2005 e-mail from plaintiff to Raimer which Raimer

---

[1] Plaintiff filed two OCRC charges of discrimination arising out of the incident. Although an original finding of no probable cause was issued, following plaintiff's request for reconsideration, the OCRC reversed its earlier finding. Defendants state that the Department did not wish to engage in conciliation at that time and, accordingly, the OCRC issued a complaint with an administrative hearing to be held at the conclusion of this litigation.

considered to be disrespectful. The e-mail was sent after Raimer again instructed plaintiff, among other things, to work the same hours as her agents. The e-mail begins with, "Here we go again! Different AIC same problems!" Other portions could be considered disrespectful:

> The PICN book is in your basket and it has been in your basket since Thursday, June 30, 2005 and it is still in your basket today which is Friday, July 1, 2005. I am looking at it as I type this memo. If you overlooked it is the big black book on top of your papers that is sticking out of the basket.
>
> ...
>
> I will not respond further to your accusations because there is no truth to them if I am given a directive I will follow it however, if I am given a suggestion I feel that I can make my own mind up. There is a big difference between a suggestion and a directive.

Additionally, plaintiff sent Raimer a lengthy memorandum on July 5, 2005 which Raimer considered to be disrespectful. Raimer requested an Administrative Investigation (AI) of plaintiff because she felt that plaintiff's communications were disrespectful and insubordinate. (Raimer aff., Exs.; Raimer depo.)

Scott Pohlman assigned Kevin Page (who was then AIC of the Central Office Administration) and Paul Rapp to conduct the AI. The investigation was started in July 2005 but had to be placed on hold because plaintiff requested and received disability leave due to stress from July 22, 2005 through January 18, 2006. Page and Rapp concluded that plaintiff had failed to follow the orders of her supervisor, Raimer. Through the investigation process, Rapp and Page determined that the difficulties that Raimer was having with plaintiff were the same difficulties that at least three prior supervisors had experienced over the previous four years. Plaintiff had a pre-disciplinary hearing, after which she was issued a five-day fine for

6

her failure to follow orders. (Page aff.)[2]

### (3) The change in plaintiff's work hours

Prior to October 1, 2006, the districts had an AIC and an AAIC to supervise the agents and handle the administrative duties of the district. Effective October 1, 2006 the districts were each assigned a second AAIC. According to a memorandum issued from Scott Pohlman, each AAIC was to be assigned the same number of agents to supervise. One AAIC would be assigned to supervise the special duty agents. Those agents included the food stamp agent(s), the district evidence officer, and the Sober Truth agent as well as any liquor investigation agents as needed to balance the numbers. The other AAIC would supervise the assistant evidence officer and agents assigned to liquor investigations. Pohlman's memorandum further provided that AAICs were to work the same hours as the agents to whom they were assigned. Additionally, Pohlman stated in an e-mail that if one of the AAICs had a planned time-off the schedule, the other AAIC would have to work a schedule so as to be available for both sets of agents. (Campbell aff. Exh.B).

On October 3, 2006, plaintiff asked Campbell that she be assigned to supervise the speciality agents on the 9:00 a.m. to 5:00 p.m. day shift. (pltf. depo.; Campbell aff.) According to plaintiff, on October 4, 2006, Campbell changed the hours for the speciality agents and their AAICs to work from 2:00 p.m. to 10:00 p.m. After plaintiff filed an OCRC charge in November 2006, Campbell returned the schedule to the original daytime hours.

---

[2] Defendant states that plaintiff appealed to the State Personnel Board of Review regarding the discipline. She also filed a charge of discrimination with the OCRC. (Doc. 31 Ex. H) Defendant states that the OCRC administratively closed the matter and the EEOC assumed jurisdiction, but has made no decision on the matter.

(pltf. depo.)

According to Campbell, based on Scott Pohlman's memorandum instructing that AAICs work the same shifts as their agents, Campbell determined that speciality position agents and their supervisor needed to work an afternoon schedule (i.e., 2:00 p.m. to 10:00 p.m.) on Thursday, Friday and Saturday.  Campbell also thought that this schedule would ensure that an AAIC was always available.  This would comply with Pohlman's e-mail directive that an AAIC always be available for the agents. (Campbell aff.; Campbell depo)

Plaintiff thereafter filed her Complaint.  Count One alleges that the Department retaliated against her in violation of Title VII.  Count Two alleges that the Department retaliated against her in violation of state law and Campbell is personally liable.

This matter is before the Court upon defendants' Motion for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242,

248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his response], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial. If he does not respond, summary judgment, if appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**<u>Discussion</u>**

**(1) Title VII**

It is well-settled that the *McDonnell Douglas* burden-shifting approach applies to retaliation claims. *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir.2007). Accordingly, in the absence of direct evidence, plaintiff must first establish a prima facie case showing that she (1) engaged in activity protected by Title VII, (2) defendant had knowledge that she engaged in protected activity, (3) defendant thereafter took an adverse employment action and (4) there is a causal connection between the protected activity and the adverse employment action. *Id., Randolph v. Ohio Dept. of Youth Serv.,* 453 F.3d 724 (6th Cir. 2006). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nonretaliatory reason for the adverse action taken against the plaintiff. The plaintiff then bears the ultimate burden of persuading the court that the proffered nonretaliatory reasons are a pretext and that the actual reason was retaliation for engaging in a protected activity. *Id.*

**(a) prima facie case**

Defendants argue that plaintiff fails to establish a prima facie case because she has no evidence of a causal connection between the protected activity and the adverse employment actions. For the following reasons, this Court agrees.

The parties agree that the disciplines at issue occurred after plaintiff filed OCRC/EEOC charges. The Sixth Circuit has recognized that "the mere fact that an adverse employment decision occurs after a charge of discrimination is not, standing alone, sufficient to support a finding that the adverse employment decision was in retaliation to the discrimination claim." *Balmer v. HCA, Inc.,* 423 F.3d 606 (6th Cir. 2005) (citations omitted)

*See also Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir.2007) ("Temporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim.") There must be other evidence of a retaliatory motive. *Schramm v. Slater,* 105 Fed. Appx. 34 (6th Cir. 2004) A causal connection between the adverse employment action and the protected activity "may be established by demonstrating that the adverse action was taken shortly after plaintiff filed the complaint and by showing that he was treated differently from other employees." *Clay v. United Parcel Service, Inc.,* - F.3d -, 2007 WL 2457455 (6th Cir. August 31, 2007).

Plaintiff asserts that a causal link is demonstrated, in each instance, by "timing and disparity of treatment."  (Doc. 29 at 9)

**(i) three day fine**

Plaintiff asserts that she was treated differently than two other employees who had not engaged in protected activity.  This Court disagrees.

First, plaintiff asserts that Campbell, who had as much if not more supervisory authority over Terrance Taylor as plaintiff did, was not investigated or disciplined over the GPS matter.  However, plaintiff does not point to evidence showing that discipline or investigation of Campbell was warranted.  Second, plaintiff asserts that Campbell never placed a GPS unit on Agent Steve Stocker's vehicle although he, too, worked with Taylor during the relevant period.  Again, plaintiff does not point to evidence showing that Campbell thought investigation of Stocker was warranted, while his testimony showed why he thought placing the GPS unit on plaintiff's vehicle was warranted.

In the absence of other retaliatory motive, the temporal proximity of plaintiff's

charges to the imposition of the fine is insufficient to establish a causal link. On this basis plaintiff fails to demonstrate a prima facie case.

### (ii) the five day fine

Plaintiff points out that she was the only person that Campbell or Raimer requested be the subject of an Administrative Investigation. (Campbell depo. 10-11; Raimer depo. 45-46) But, plaintiff does not identify evidence of other employees under Campbell's or Raimer's supervision whose conduct warranted an Administrative Investigation.

Again, without retaliatory motive, the temporal proximity of plaintiff's charges to the imposition of the fine is insufficient to establish a causal link.

### (iii) the schedule change

Plaintiff points to no disparity in treatment and, in fact, asserts that Campbell changed the hours for the speciality agents in Cleveland and their AAIC supervisors. Thus, the hour change was not unique to plaintiff. As a result, plaintiff fails to show a causal connection.

For these reasons, plaintiff fails to establish a prima facie case as to any of the three instances of alleged retaliation.

### (b) pretext

Even assuming she established a prima facie case, plaintiff fails to show pretext.[3]

In order to demonstrate pretext, plaintiff must show by a preponderance of the evidence that the defendant's stated reasons 1) have no basis in fact, 2) did not actually motivate the adverse actions, or 3) were insufficient to motivate the adverse actions. *Denhof*

---

[3] Plaintiff acknowledges that defendants have articulated legitimate reasons for their actions.

*v. City of Grand Rapids*, 494 F.3d 534 (6th Cir. 2007) (citations omitted).

**(i) three day fine**

With regard to the three day fine, plaintiff points to the following as evidence of pretext.

First, Campbell testified that the GPS unit malfunctioned while it was on plaintiff's vehicle. Plaintiff contends that "proper procedure would bar blindly relying on data retrieved from a defective instrument in seeking discipline unless there was an ulterior motive." (Doc. 29 at 15) Campbell, however, testified that,

> it was apparent that the last date that it started to malfunction a little bit. It showed the time she left her residence to go to Columbus, but it did not reflect the time that it was taken off. If I recall, it did not show the travel time down.

(Campbell depo. 58). It is apparent from this testimony that Campbell was aware that the GPS unit malfunctioned only at the end of the period of time that it was on plaintiff's vehicle, and he did not "blindly" rely on it as he knew that it failed to record a portion of plaintiff's trip.

Second, Raimer testified that Shawn Tatter told her he was not involved in the GPS incident when he, in fact, was the one who placed the units on the vehicles. (Raimer depo. 41-42) There is no evidence, however, that Raimer was involved in the administrative investigation. Campbell testified that he turned over his results to Scott Pohlman and Deputy Director Ed Duvall, and that the matter was referred for criminal investigation to the Ohio State Highway Patrol. (Campbell depo. 60-61)

Finally, Campbell did not receive prior permission to place the unit on plaintiff's car while he requested permission to place it on Taylor's vehicle. Campbell admits that he did

13

not receive the prior permission as he considered it an extension of the investigation. At any rate, when Campbell told Pohlman that he had placed the unit on plaintiff's vehicle, Pohlman told Campbell to remove it and he did. Campbell had no part in deciding whether plaintiff should have been disciplined for failing to supervise Taylor. Thus, the fact that Campbell did not receive permission to place the GPS unit on plaintiff's vehicle does not establish that the reason for Campbell's supervisors' decision to discipline plaintiff had no basis in fact, did not actually motivate the decision, or was insufficient to motivate the decision.

Plaintiff fails to show pretext as to the three day fine.

### (ii) the five day fine

With regard to the five day fine, plaintiff points to the following as evidence of pretext.

At deposition, Raimer was asked whether, during the investigation into plaintiff's alleged insubordination, Raimer made allegations that plaintiff physically threw memoranda or paperwork at Raimer. Raimer answered, "No." Raimer was also asked whether she ever made allegations that plaintiff was *verbally* insubordinate to Raimer. (emphasis added) Raimer answered, "I don't recall. I don't think so." (Raimer depo. 29) Raimer was then asked to look at what is characterized in the deposition testimony as a brief summary prepared during the investigation which stated that plaintiff physically threw memoranda and was verbally insubordinate. Raimer stated that she did not write the summary, but that it was not consistent with her complaints to the supervisors. (*Id.* at 30)

This testimony is insufficient to establish pretext. In order to show pretext, "The plaintiff must produce evidence from which the jury could reasonably reject the defendants'

14

explanation and infer that the defendants intentionally discriminated against [plaintiff.]" *Larocque v. City of Eastpointe,* 2007 WL 2426441 (6th Cir. Aug. 24, 2007) (citations omitted) Plaintiff fails to introduce evidence to controvert Raimer's averments regarding plaintiff's conduct which Raimer considered to justify a request for an Administrative Investigation. The e-mails and memorandum submitted with Raimer's affidavit were presumably considered during the investigation conducted by Page and Rapp. On this basis, it is reasonable that the investigators concluded that plaintiff failed to follow Raimer's orders.

Plaintiff testified that an employee told her that "Rita Raimer was doing what she was told to do to me." (pltf. depo. 83) In her brief, plaintiff states that this means that plaintiff was told that Raimer was sent to the Cleveland district to eliminate plaintiff. Obviously, this is insufficient evidence upon which a jury could reasonably reject the defendants' explanation for disciplining plaintiff.

Plaintiff fails to show pretext as to the five day fine.

**(iii) the schedule change**

With regard to the change in work hours, plaintiff points to the following as evidence of pretext.

At deposition, Campbell was asked to explain his reason for changing the speciality agent hours and then changing them back. (Campbell depo. 78-80) Plaintiff asserts that the explanation is "incomprehensible." Campbell's explanation, however, is consistent with the one offered in his affidavit. Specifically, in both his deposition and affidavit testimony, Campbell stated that based on Scott Pohlman's memorandum instructing that AAICs work the same shifts as their agents, Campbell determined that speciality position agents and their

supervisor needed to work an afternoon schedule (i.e., 2:00 p.m. to 10:00 p.m.) on Thursday, Friday and Saturday. Campbell also thought that this schedule would ensure that an AAIC was always available so as to comply with Pohlman's e-mail directive that an AAIC always be available for the agents. Plaintiff fails to point to evidence that Campbell did not "honestly believe" in the non-discriminatory reason for his action. *Larocque, supra* (citations omitted) ("The plaintiff must submit evidence demonstrating that the employer did not 'honestly believe' in the proferred non-discriminatory reason for its adverse employment action. To inquire into defendant's 'honest belief,' the court looks to whether the employer can establish 'reasonable reliance' on the particularized facts that were before the employer when the decision was made.")

Plaintiff fails to show pretext as to the schedule change.

For the foregoing reasons, defendants are entitled to summary judgment on the Title VII claim.

**(2) Ohio law**

Count Two alleges that the Department retaliated against plaintiff in violation of Ohio Revised Code § 4112 and that Campbell is personally liable under that state law.

Defendants assert that the Eleventh Amendment precludes these claims in this Court. This Court agrees. *See Bialczak v. State of Ohio Dept. of Taxation*, 2000 WL 1888789 (6th Cir. Dec. 22, 2000) ("Ohio Revised Code § 4112.99 authorizes suit against the State of Ohio as an employer in its Court of Claims, but the statute does not waive the State's Eleventh Amendment immunity from suit in federal court.") and *Dendinger v. Ohio*, 207 Fed.Appx. 521 (6th Cir. 2006) ("Absent state waiver or express congressional abrogation, the Eleventh

16

Amendment deprives the federal courts of the power to entertain suits on claims asserted under § 4112.")

Summary judgment is, therefore, warranted on Count Two.

**Conclusion**

For the foregoing reasons, defendants' Motion for Summary Judgment is granted.

IT IS SO ORDERED.

      /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 9/25/07